UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

NICHOLAS KADLEC and,
CASEY REID-KADLEC,

Case no. 23-10753-t7

Debtors.

# OPINION

Before the Court is the New Mexico Attorney General's motion for a declaration that the automatic stay imposed by § 362(a)[1] does not apply to a prepetition state court action he brought against Debtor Nicholas Kadlec and others, or alternatively for relief from the stay. At issue is whether the action comes within § 362(b)(4), the "police power" exception to the automatic stay. The Court concludes that some of the counts asserted in the action are within the police power exception, while others are not. For the counts subject to the automatic stay, cause has not been shown to grant stay relief.

A. <u>Facts</u>.[2]

Debtors and the Attorney General have asked the Court to rule on the motion based on the facts that can be gleaned from the current record. The Court therefore finds:[3]

Debtors are shareholders of NM Solar Group, Inc. ("NM Solar"), which was in the business of selling and installing residential and commercial solar panel electricity generating systems. Mr. Kadlec is the former president of NM Solar. NM Solar abruptly shut down on August 11, 2023. At the time, it had many outstanding contractual and other obligations and had taken deposits or

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C.
[2] Some of the Court's findings may be in the discussion section of the opinion.
[3] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (approving such judicial notice); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

payments for work that had not been started and/or completed. Warranties paid for by customers likely will not be honored. The shutdown caught most people off guard because recent public statements allegedly made by Mr. Kadlec indicated that the future was promising for Debtor's business.

The Attorney General brought an action against Mr. Kadlec, NM Solar, and others on August 21, 2023, styled *State of New Mexico ex rel. Raul Torrez v. NM Solar Group Inc., et al.*, case no. D-101-CV-202302015, in the First Judicial District Court, State of New Mexico (the "State Court Action"). The State Court Action includes two counts under the New Mexico Unfair Practices Act, N.M.S.A. § 57-12-1 et seq. ("UPA") (for violation of the UPA and for injunctive relief), and three counts under New Mexico common law (unjust enrichment, fraud, and negligence). The alleged wrongdoings included not only misrepresentations about NM Solar's financial condition but also about how long it takes to install the solar systems, expected electricity savings, and available tax credits and rebates. The prayer for relief asks for compensatory and punitive damages, treble damages, attorney fees, civil penalties, interest, disgorgement, restitution, and declaratory and injunctive relief.

Debtors filed this chapter 7 case on September 1, 2023.[4] It is a "no asset" case. Debtors are eligible for a chapter 7 discharge, although no discharge order has yet been entered. The Attorney General did not file a nondischargeability proceeding. Thus, any monetary claims asserted against Mr. Kadlec in the State Court Action will be discharged upon entry of the discharge order, except, possibly, for the civil penalties claim.[5] It is not clear from the complaint whether the Attorney General is seeking to penalize Mr. Kadlec and the other individual defendants, or only NM Solar.

---

[4] NM Solar filed a chapter 7 bankruptcy case on August 28, 2023.
[5] *See* § 523(a)(7) (excepting from discharge debts for penalties payable to governmental units, other than certain tax penalties and penalties for transactions that occurred more than three years prepetition).

The Attorney General filed the subject motion on December 13, 2023. On January 3, 2024, the Attorney General served a notice of deadline to object to the motion. Debtor timely objected. The contested matter has been fully briefed. The Court held a preliminary hearing on the motion on March 7, 2024. At the hearing, the parties declined the opportunity to provide evidence at a final hearing, instead asking the Court to rule on the briefs and the facts available from the record.

The motion alleges that 140 of NM Solar's customers lodged complaints about NM Solar with the Attorney General's office. The identities of the customers were not disclosed. About 250 customers filed proofs of claim in NM Solar's bankruptcy case.

Although the motion is titled "Motion for Relief from Automatic Stay" and the Attorney General asked for stay relief in the opening paragraph as an alternative, the rest of the motion is devoted entirely to arguing that the automatic stay does not apply. The Attorney General did not argue for stay relief or attempt to show that "cause" exists to modify the stay. Nevertheless, the Court will address the alternative request.

B.      The New Mexico Unfair Practices Act.

The UPA makes unlawful certain unfair, deceptive, and unconscionable trade practices. The statute includes a non-exhaustive list of 19 unfair or deceptive trade practices, N.M.S.A. § 57-12-2(D), as well as a general definition of unconscionable trade practices N.M.S.A. § 57-12-2(E). The UPA grants standing to the Attorney General to bring claims for violation of the statute:

> A. Whenever the attorney general has reasonable belief that any person is using, has used or is about to use any method, act or practice which is declared by the Unfair Practices Act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the state alleging violations of the Unfair Practices Act. The action may be brought in the district court of the county in which the person resides or has his principal place of business or in the district court in any county in which the person is using, has used or is about to use the practice which has been alleged to be unlawful under the Unfair Practices Act.
>
> B. In any action filed pursuant to the Unfair Practices Act, including an action with respect to unimproved real property, the attorney general may petition the district court for *temporary or permanent injunctive relief and restitution*.

N.M.S.A. § 57-12-8 (italics added). The restitution remedy is discussed in N.M.S.A. § 57-12-9:

> A. In lieu of beginning or continuing an action pursuant to the Unfair Practices Act, the attorney general may accept a written assurance of discontinuance of any practice in violation of the Unfair Practices Act from the person who has engaged in the unlawful practice. The attorney general may require an agreement by the person engaged in the unlawful practice that, by a date set by the attorney general and stated in the assurance, he will make *restitution to all persons of money, property or other things received from them in any transaction related to the unlawful practice.* . . .

(italics added). Finally, the UPA allows the Attorney General to recover civil penalties:

> In any action brought under Section 57-12-8 N.M.S.A. 1978, if the court finds that a person is willfully using or has willfully used a method, act or practice declared unlawful by the Unfair Practices Act, the attorney general, upon petition to the court, may recover, on behalf of the state of New Mexico, a civil penalty of not exceeding five thousand dollars ($5,000) per violation.

N.M.S.A. § 57-12-11.

In addition to the Attorney General's right to enforce the UPA, "persons" damaged by unfair or unconscionable practices are given the private remedies of injunctive relief, § 57-12-10(A), actual damages, § 57-12-10(B), treble damages if the practice was willful, § 57-12-10(B), and attorney fees. § 57-12-10(C). The Attorney General is not a "person" within the definition. N.M.S.A. § 57-12-2(a).

C.    <u>The Automatic Stay and the Police Power Exception</u>.

Section 362(a) provides in part:

> [A] petition filed under section 301 . . . operates as a stay, applicable to all entities, of . . . the continuation . . . of a judicial . . . action or proceeding . . . against the debtor that was . . .commenced before the commencement of the case under this title . . . .

§ 362(a)(1). However, the automatic stay does not apply to:

> . . . the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power . . . .

§ 362(b)(4). The Tenth Circuit discussed this "police power" exception in *Eddleman v. U.S. Dept. of Labor*, 923 F.2d 782 (10th Cir. 1991), *overruled in part on other grounds by Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson*, 968 F.2d 1003, 1005 n.3 (10th Cir. 1992). Mr. Eddleman, a mail hauler for the U.S. Postal Service, filed a chapter 11 bankruptcy case in August 1986. Nine months later the U.S. Department of Labor brought an administrative action against him, alleging that he underpaid workers and failed to keep adequate pay records, in violation of the Service Contract Act, 41 U.S.C. §§ 351-358 (the "SCA"). The Department sought to liquidate claims for back pay due to employees and to add Mr. Eddleman to a list of SCA violators.

In response to the administrative action, Mr. Eddleman filed an adversary proceeding to enforce the automatic stay. At issue was the scope of the police power exception. Discussing whether the Department's action came within the exception, the Tenth Circuit held:

> Of course, not every agency action against a debtor can be characterized as one that enforces "police or regulatory power." Consequently, courts have developed two tests for determining whether agency actions fit within the exception. Under the "pecuniary purpose" test, the court asks whether the government's proceeding relates primarily to the protection of the government's pecuniary interest in the debtor's property and not to matters of public policy. *See Edward Cooper Painting*, 804 F.2d at 942; *In re State of Missouri*, 647 F.2d 768, 776 (8th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S. Ct. 1035, 71 L. Ed. 2d 318 (1982). If it is evident that a governmental action is primarily for the purpose of protecting a pecuniary interest, then the action should not be excepted from the stay. In contrast, the "public policy" test distinguishes between government proceedings aimed at effectuating public policy and those aimed at adjudicating private rights. *See Edward Cooper Painting,* 804 F.2d at 942. Under this second test, actions taken for the purpose of advancing private rights are not excepted from the stay. *See id.*

*Id.* at 791. The Tenth Circuit then applied the tests to the Department's administrative action:

> In the case at bar, we conclude that DOL's enforcement proceedings are exempt from the stay under either test. The remedies sought by DOL are not designed to advance the government's pecuniary interest. DOL's pursuit of debarment and liquidation of back-pay claims was primarily to prevent unfair competition in the market by companies who pay substandard wages. Although we do not feel bound to apply it, we also conclude that the "public policy" test presents no barrier to DOL's actions. Despite the fact that DOL sought liquidation of back-pay claims for specific individuals, we do not characterize the use of that remedy as an assertion

of private rights. We conclude instead that the request for liquidation of back-pay claims was but another method of enforcing the policies underlying the SCA. Our conclusion is bolstered by the fact that the back-pay claimants would not receive any extra priority by virtue of the DOL action. Actual collection of the back-pay claims must proceed according to normal bankruptcy procedures. Accordingly, we hold that DOL's enforcement proceedings in this case were exempt from the automatic stay under section 362(b)(4).

*Id.*

D. Applying *Eddleman* to the UPA counts.

1. Declaratory and injunctive relief. The case law is uniform that seeking declaratory or injunctive relief under state consumer protection laws is a classic exercise of police power. *See, e.g., In re Energy Guard Midwest LLC*, 595 B.R. 588, 592 (Bankr. D. Kan. 2018) (seeking declaratory and injunctive relief for violation of consumer protection laws is a quintessential police and regulatory function); *JSS of Albuquerque, LLC*, 2017 WL 3575654, at *7 (Bankr. D.N.M.) (seeking declaratory relief carries out the public policy of the UPA, rather than pursuing the state's pecuniary interest); *In re Charter First Mortg., Inc.*, 42 B.R. 380, 384 (Bankr. D. Ore. 1984) ("totally appropriate" for the state to proceed in state court to attempt to obtain an injunction under Oregon's version of the UPA); *In re Nelson*, 240 B.R. 802, 804-05 (Bankr. D. Me. 1999) (to the same effect). These cases rightly conclude that the relief, if warranted, vindicates the public policy against unfair trade practices, rather than protecting a state pecuniary interest or adjudicating private rights. The Court concludes that the police power exception applies to the Attorney General's request for declaratory and injunctive relief under the UPA.

2. Civil penalties. The Court concludes that the Attorney General's request for civil penalties also comes within the police power exception. Civil penalties serve to punish past violations and are primarily for protection of the public. *See, e.g., JSS*, 2017 WL 3575654, at *8 (so holding); *Energy Guard Midwest*, 595 B.R. at 593 (citing and following *JSS*); and *Charter*

*First*, 42 B.R. at 384 (same). This is so even though the state would be the incidental beneficiary of any civil penalties awarded and collected.

       3.      <u>Restitution</u>. The Attorney General's restitution request is made on behalf of NM Solar's customers and seeks to adjudicate private rights. *See, e.g., New Mexico ex rel. King v. Capital One Bank (USA)*, 980 F. Supp. 2d 1346, 1353 (D.N.M. 2013) (restitution claims under the UPA are an "exclusively private interest"); and *New Mexico ex rel. King v. HSBC Bank Nevada, N.A.*, 2013 WL 12138908, at *3 (D.N.M.) (attorney general's restitution claim under the UPA "is seeking monetary recovery on behalf of New Mexico consumers").[6] The restitution remedy therefore appears to fail the public policy test.

However, restitution may also effectuate, to some degree, a public policy, i.e., by making unfair trade practices unprofitable. Because of this public policy component, it can be argued that "hybrid" government actions like restitution come within the police power exception. There is case law support for this position. *See, e.g., Energy Guard Midwest,* 595 B.R. at 593-94 (Kansas's restitution claim under the state consumer protection statute is not stayed); *In re Berry*, 2019 WL 3992719, at *3 (Bankr. S.D. Fla.) (restitution count fell within the state's police and regulatory powers); *In re Nelson*, 240 B.R. 802, 806 (Bankr. D. Me. 1999) (same); *In re Guardia*, 522 B.R. 734, 736 (Bankr. S.D. Fla. 2014) (same); and *In re First Alliance Mortg. Co.*, 263 B.R. 99, 110 (9th Cir. BAP 2001) (same).

How would the Tenth Circuit rule on whether a hybrid government action comes within the police power exception? The Court concludes that, following *Eddleman*, such hybrid actions would pass the public policy test if, and only if, the public policy component predominates. In

---

[6] These cases apply *Rex, Inc. v. Manufactured Hous. Comm.*, 119 N.M. 500 (S. Ct. 1995), which held that there is a privity of interest between a consumer and the state of New Mexico to the extent a state consumer protection statute gives a state agency the authority to bring an action on the consumer's behalf.

*Eddleman*, the Tenth Circuit held that the back-pay claims were "*primarily* to prevent unfair competition in the market by companies who pay substandard wages," 923 F.2d at 791 (italics added). This clearly is a public policy. Later the circuit held: "[d]espite the fact that DOL sought liquidation of back-pay claims for specific individuals, we do not characterize the use of that remedy as an assertion of private rights." *Id.*

In contrast to the SCA's back-pay claims, the restitution remedy under the UPA primarily seeks to adjudicate private rights. *See King v. Capital One*, 980 F. Supp. 2d at 1353 (restitution claims are an "exclusively private interest"); *JSS*, 2017 WL 3575654, at *8 (the public interest in restitution claims is minimal); and *King v. HSBC Bank*, 2013 WL 12138908, at *3 (restitution claims are brought on behalf of consumers). The public policy aspect of the remedy is minor, not primary. The Court therefore concludes that the restitution count is stayed. For other cases reaching the same conclusion *see JSS*, 2017 WL 3575654, at *8; *Charter First*, 42 B.R. at 385 (the objective of a restitution action is to aid in the collection of property for third parties and does not come within the § 364(b)(4) exception); *In re Dunbar*, 235 B.R. 465, 475 (9th Cir. BAP 1999) ("To the extent the state agency instituted proceedings to seek restitution ... for ... violations of the Business and Professions Code in that amount, such state actions are not excepted from the automatic stay") (citation omitted); *In re Poule*, 91 B.R. 83, 87 (9th Cir. BAP 1988) (following *Charter First* and holding that an agency's order of correction was essentially a restitution order and was stayed); *In re Berg*, 198 B.R. 557, 562 n. 11 (9th Cir. BAP 1996) ("Sanctions which are essentially a restitution order may not be within the § 362(b)(4) public policy exception"); *In re Draughon Training Institute, Inc.*, 119 B.R. 921, 925 (Bankr. W.D. La. 1990) (restitution claim not an exercise of the state's police power); *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 391 (6th Cir. 2001) (action under the Fair Labor Standards Act that merely sought to recover unpaid minimum wages,

unpaid overtime, and liquidated damages did not come within the exception because such action only incidentally served the public interest).

It may be that in some jurisdictions a minimal or incidental public interest is enough for a hybrid government action to pass the public policy test. The Court does not believe *Eddleman's* version of the public policy test is so broad.[7]

4. <u>Actual damages and treble damages</u>. The same conclusion must be drawn regarding the Attorney General's request for actual (compensatory) damages and treble damages. These damages are awardable in connection with the private remedies available to "persons" harmed by NM Solar's unfair trade practices. The remedies are, by definition, the assertion of private rights, not public policy, and therefore are stayed.

Furthermore, although the Attorney General is given the right to seek restitution on behalf of "persons," he is not given the right to bring actions to enforce the private remedies given to "persons" under § 57-12-10. *See, e.g., State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 806 (Ct. App. 1987) ("The UPA authorizes the attorney general to pursue injunctive relief and restitution to injured persons, in addition to actions for civil penalties for willful violations of the Act. The UPA also authorizes private actions for actual or statutory damages, injunctive relief, and attorneys fees."). The private remedies must be pursued by the harmed persons themselves.

5. <u>Attorney fees</u>. The Attorney General relies on N.M.S.A. § 57-12-10(C) for his request for an attorney fee award. That reliance is misplaced. The award of attorney fees under that subsection is a private remedy, and not available to the Attorney General. Without a basis for

---

[7] *See also Martin v. Occupational Safety and Health Review Com'n*, 941 F.2d 1051, 1054 (10th Cir. 1991) (Baldock, J.) (citing *Eddleman* for the proposition that "we may review proceedings involving the determination and entry of a monetary penalty because the government's police or regulatory power is involved.").

awarding attorney fees, the Court cannot find that the police power exception applies to the attorney fee request.

   6.  <u>Interest</u>. Interest can be awarded in connection with a New Mexico judgment. *See* N.M.S.A. §§ 56-8-4(B) (pre-judgment interest) and 56-8-4(A) (post-judgment interest). As the automatic stay does not apply to the Attorney General's civil penalty remedy, neither is he stayed from seeking pre- or post-judgment interest on any resulting civil penalty judgment.

   7.  <u>Punitive damages and disgorgement</u>. The Attorney General asks for punitive damages[8] and disgorgement[9] in the State Court Action. Neither remedy is available under the UPA. Presumably the remedies are sought in connection with the common law claims, discussed below.

E.  <u>Applying *Eddleman* to the Common Law Counts</u>.

  The Attorney General brought unjust enrichment, fraud, and negligence counts against Debtor. The Court concludes that the counts do not come within the police power exception because they seek to adjudicate private rights rather than advance a public policy. *See above*. Where the public policy aspect of the restitution claim is minimal, it is nil in the common law counts. The common law counts are stayed.

F.  <u>The Attorney General's *Parens Patriae* Standing to Bring the Common Law Counts</u>.

  The Attorney General alleges that the common law counts are brought "pursuant to its *parens patriae* authority for the purpose of protecting its citizens from unfair and deceptive trade

---

[8] Customers cannot be awarded both punitive damages and treble damages for an alleged violation of the UPA that also constitutes fraud—they must pick one. *Hale v. Basin Motor Co.*, 110 N.M. 314, 320 (S. Ct. 1990).
[9] Disgorgement is an appropriate remedy for unjust enrichment. *See, e.g., Miller v. Bank of America, N.A.*, 352 P.3d 1162, 1169 (N.M. 2015). The Attorney General conceded that disgorgement is subject to the automatic stay.

-10-
Case 23-10753-t7    Doc 42    Filed 04/26/24    Entered 04/26/24 11:45:46 Page 10 of 15

practices." The *parens patriae* doctrine was examined by Judge James A. Parker in *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292 (D.N.M. 2018):

> "'Parens patriae standing has been explained on the ground that the plaintiff state is not merely advancing the rights of individual injured citizens, but has an additional sovereign or quasi-sovereign interest.'" *Satsky*, 7 F.3d at 1469 (quoting 17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4047 at 223 (1988)). "In order to maintain [a *parens patriae*] action, the State must articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592, 607, 102 S. Ct. 3260, 73 L. Ed. 2d 995 (1982). "The State must express a quasi-sovereign interest." *Id.* "[A] state may not sue to assert the rights of private individuals." *Satsky*, 7 F.3d at 1469; *see also Snapp*, 458 U.S. at 602, 102 S. Ct. 3260 (private interests do not become quasi-sovereign "simply by virtue of the State's aiding in their achievement."). "[I]f the State is only a nominal party without a real interest of its own[,] then it will not have standing under the *parens patriae* doctrine." *Snapp*, 458 U.S. at 600, 102 S. Ct. 3260.

*Id.* at 1310. Here, the state, acting through the Attorney General, has no interest of its own in the common law counts; it is merely a nominal party. The counts are not brought for New Mexicans generally but for the very small percentage of New Mexico citizens who allegedly were harmed by NM Solar's unfair trade practices. NM Solar was already out of business when the Attorney General filed the State Court Action, so the number of aggrieved parties is finite and, to judge by the motion and the proofs of claim, 250 or less. While the state has an interest in enforcing the UPA, that interest is effectuated through the UPA's injunctive and civil penalty remedies. The state has no quasi-sovereign interest in the common law counts. The Court concludes, therefore, that the Attorney General lacks *parens patriae* standing to bring the counts, so the scope of police power exception as applied to those counts is moot.[10]

G.  <u>Stay Relief</u>.

---

[10] The Court may address standing issues sua sponte. *See, e.g., Mackin v. OM Sai Corp.*, 588 F. Supp. 3d 1243, 1247 (D.N.M. 2022), citing *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013).

Without argument or an attempt to carry his evidentiary burden, the Attorney General has asked for the alternative relief of stay modification so he can litigate any stayed counts.

The Tenth Circuit has held that because "there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), overruled on other grounds, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011). "Cause" is considered a fact, not a conclusion of law, and a finding of cause is reversible only if "clear error" was committed. *In re JE Livestock, Inc.*, 375 B.R. 892, 893-94 (10th Cir. BAP 2007).

    1.    <u>The *Curtis* factors</u>. Motions for relief from the automatic stay are often filed so litigation pending in another forum can proceed to judgment. In such situations the Tenth Circuit "has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *In re Gindi*, 642 F.3d at 872. Courts often turn to twelve non-exclusive factors identified in *In re Curtis*, 40 B.R. 795 (Bankr D. Utah 1984), to assist in the analysis. *See, e.g., In re Busch*, 294 B.R. 137, 141 (10th Cir. BAP 2003) ("Twelve factors were identified in [*Curtis*] as some of the issues a bankruptcy court might consider when determining whether to lift the stay to permit pending litigation in another forum.").[11] The Court weighs the *Curtis* factors as follows:

---

[11] The "*Curtis* factors" are: (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) The impact of the stay on the parties and the 'balance of hurt.' *Curtis*, 40 B.R. at 799-800.

| Factor | Discussion |
|---|---|
| (1) Whether the relief will result in a partial or complete resolution of the issues. | Due to the lack of *parens patriae* standing, stay relief would not resolve the common law claims. Furthermore, because Debtors are eligible for a discharge, the stayed counts are moot. |
| (2) The lack of any connection with or interference with the bankruptcy case. | Stay relief would interfere with the bankruptcy case because the stayed counts are subject to discharge. |
| (3) Whether the foreign proceeding involves the debtor as a fiduciary. | N/A |
| (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases. | No such specialized tribunal has been established. |
| (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation. | No insurance company has assumed financial responsibility. |
| (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question. | N/A |
| (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties. | Debtors would be prejudiced because Mr. Kadlec might be forced to litigate claims that are subject to discharge. |
| (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c). | N/A |
| (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). | N/A |
| (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties. | Judicial economy would be better served by keeping the stay in place. The stayed claims are subject to discharge and therefore moot. |
| (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial. | Because Debtors filed this case eleven days after the Attorney General filed the State Court Action, there has been no progress in the action. |
| (12) The impact of the stay on the parties and the 'balance of hurt.' | The automatic stay does not hurt the Attorney General. He lacks standing to pursue the common law claims on behalf of NM Solar's customers, and all the stayed claims are subject to discharge and therefore moot. |

2. <u>The *Crespin* factors</u>. The Court issued *In re Crespin*, 581 B.R. 904 (Bankr. D.N.M. 2018), in which it identified certain of the *Curtis* factors, and certain other factors, that

often are the most relevant to determining whether to modify the automatic stay to allow a party to proceed with pending litigation in another court.[12] The Court weighs the *Crespin* factors that have not been discussed as part of the *Curtis* analysis:

| Factor | Discussion |
|---|---|
| (1) Whether the nonbankruptcy court is a specialized tribunal. | Discussed above. |
| (2) Whether granting stay relief would hinder or delay estate administration. | There is no estate to administer. |
| (3) Whether the facts of the matter require a deviation from the Court's core function of allowing or disallowing claims. | They do not. This is a no asset case so there are no claims to administer. |
| (4) Whether lifting the stay would promote judicial economy. | It would not. Given the imminent entry of the discharge order, judicial economy is better served by keeping the stay in place. |
| (5) Whether it would be less expensive for the parties to litigate in bankruptcy court. | It would be less expensive to litigate in bankruptcy court because no litigation is necessary—the debts will be discharged. |
| (6) Whether lifting the stay would prejudice other creditors. | Lifting the stay would not prejudice other creditors, but neither would it help the Attorney General, as the claims are subject to discharge. |
| (7) The movant's likelihood of prevailing in the litigation. | Due to lack of *parens patriae* standing, the Attorney General is not likely to prevail on the common law claims he brought. Before Debtors filed this case, the Attorney General was likely to succeed in his restitution claim against NM Solar, but probably not against Mr. Kadlec. Now, the restitution claim against Mr. Kadlec is moot. |
| (8) Whether the "balance of the hurt" weighs in favor of or against stay relief. | Discussed above. |

The Court finds and concludes that the *Curtis/Crespin* factors weigh heavily in favor of keeping the automatic stay in place for the Attorney General's non-police power counts. Given the

---

[12] The "*Crespin*" factors are: (1) Whether the nonbankruptcy court is a specialized tribunal; (2) Whether granting stay relief would hinder or delay estate administration; (3) Whether the facts of the matter require a deviation from the Court's core function of allowing or disallowing claims; (4) Whether lifting the stay would promote judicial economy; (5) Whether it would be less expensive for the parties to litigate in bankruptcy court; (6) Whether lifting the stay would prejudice other creditors; (7) The movant's likelihood of prevailing in the litigation; and (8) Whether the "balance of the hurt" weighs in favor of stay relief. *Crespin*, 581 B.R. at 908-10.

Case 23-10753-t7    Doc 42    Filed 04/26/24    Entered 04/26/24 11:45:46 Page 14 of 15

Attorney General's standing problems and the imminent discharge order, nothing would be gained by granting stay relief. The stay relief request must be denied.

## Conclusion

The automatic stay does not apply to the Attorney General's requests for declaratory and injunctive relief and civil penalties. The stay does apply, however, to the restitution and common law counts. Further, the Attorney General lacks standing to assert the common law counts or to seek the private remedies available under the UPA. Finally, cause has not been shown to modify the automatic stay for the stayed counts. An order consistent with this opinion will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 26, 2024
Copies to: counsel of record